IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| MIKE EDWARD ISERLOTH, | CV 16-114-GF-BMM-JTJ |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS** |
| vs. | |
| NANCY BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

## I.  SYNOPSIS

Mike Iserloth (Mr. Iserloth) brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of the Social Security Administration's decision ("Commissioner") denying his application for disability benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433.  Mr. Iserloth filed his application for disability and disability insurance benefits on January 23, 2014, alleging an disability onset date of December 11, 2013 (Doc. 7 at 158-73).  Mr. Iserloth was born on September 14, 1957.  (*Id.* at 65).  He was 57 years old when he filed his application for benefits on July 9,

2015, and 58 years old when the ALJ entered his June 27, 2016 decision.

Mr. Iserloth claims that he is disabled due to: "Orchiectomy/abdominal seminoma- 20 chemotherapy treatments/blood clots, right femoral artery massive swelling, neuropathy bilateral lower extremities, weakness, fatigue, depression" (*Id.* at 186).

Mr. Iserloth's claim was denied initially on March 11, 2014, and on reconsideration on July 21, 2014.  (*Id*. at 97-99, 102-03).  A timely request for a hearing before an Administrative Law Judge ("ALJ") was filed on August 26, 2014.  (*Id.* at 107-08).  An ALJ conducted a hearing on April 22, 2015, at which Mr. Iserloth appeared with counsel.  (*Id.* at 27-62).  The ALJ's June 5, 2015 decision denied Mr. Iserloth's application for benefits.  (*Id.* at 8-20).  On August 3, 2015, Mr. Iserloth timely requested that the Commissioner review the ALJ's decision.  (*Id.* at 7).  On September 13, 2016, the Appeals Council for the Commissioner denied Mr. Iserloth's request for review, making the ALJ's decision the Commissioner's final decision.  (*Id.* at 1-3).

On November 8, 2016, Mr. Iserloth timely filed a Complaint seeking judicial review of the Commissioner's decision.  (Doc. 2).  Title 42 of the United States Code, Section 405(g) vests the Court with jurisdiction over this action.  United States District Judge Brian Morris has referred this case to the undersigned to

conduct all necessary hearings and submit proposed findings of fact and recommendations for the disposition of all motions. (Doc. 10). The Great Falls Division of the District of Montana is the proper venue because Mr. Iserloth resides in Cascade County, Montana. (Doc. 2 at 2); 42 U.S.C. 405(g); Local Rule 1.2(c)(2).

On March 30, 2017, Mr. Iserloth filed an opening brief requesting that the Court reverse the Commissioner's decision and remand for an immediate award of benefits or, in the alternative, remand for a further hearing. (Doc. 11). On April 28, 2017, the Commissioner filed a response brief requesting that the Court affirm her decision. (Doc. 12). On June 12, 2017, Mr. Iserloth filed a reply brief. (Doc. 15). The motion is ripe for decision.

## II.   STANDARD OF REVIEW

The Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006). Substantial evidence has also been described as "more than a mere

scintilla" but "less than a preponderance." *Desrosiers v. Sec. of Health and Hum. Services*, 846 F.2d 573, 576 (9th Cir. 1988).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Comm'r of SSA*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Id.*, at 1193 (citing *Morgan v. Comm'r*, 169 F.3d 595, 599 (9th Cir. 1999)). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (quoting *Edlund*, 253 F.3d at 1156). Where evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld. *Thomas v. Barhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Green v. Sheckler*, 803 F.2d 528, 530 (9th Cir. 1986). The Court may reject the findings not supported by the record, but it may not substitute its findings for those of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

## III.  BURDEN OF PROOF

A claimant is disabled for purposes of the Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months"; and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of SSA*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. §1382(a)(3)(A)-(B)).

The Commissioner's regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled.  *Para v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (citing 20 C.F.R. § 404.1520).  The five steps are:

1.   Is the claimant presently working in a substantially gainful activity?  If so, the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2.   Is the claimant's impairment severe?  If so, proceed to step three.  If not, the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3.      Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4.      Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5.      Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Id*.

The claimant bears the burden of proving steps one through four, consistent with the general rule that "[a]t all times, the burden is on the claimant to establish [his] entitlement to disability insurance benefits." *Id.* (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.1998)). Once this prima facie case is established, the burden shifts to the Commissioner at the fifth step to show that the claimant may perform other gainful activity. *Id.* (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)).

## IV.  BACKGROUND

### A.    ALJ's determination

At step one, the ALJ determined that Mr. Iserloth has not engaged in substantial gainful activity since December 11, 2013, the alleged onset date of his disability. (Doc. 7 at 13). At step two, the ALJ found that Mr. Iserloth a severe

impairment of a recurrent deep vein thrombosis and a non-severe impairment of a stage IIC seminoma with a large upper abdominal retroperitoneal mass.  (*Id*. at 13).

At step three, the ALJ found that Mr. Iserloth did not have an impairment, or combination of impairments, that met or was medically equal to one of the listed impairments.  (*Id*. at 15).

Before considering step four, the ALJ assessed Mr. Iserloth as having the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 1567(c) and 416.967(c) with the following limitations: Mr. Iserloth is able to lift and carry fifty pounds occasionally and twenty-five pounds frequently, push and pull fifty pounds occasionally and twenty-five pounds frequently, stand/walk for six hours per day, and sit for six hours per day; may change positions at normal work breaks; can frequently climb ramps and stairs, stoop, kneel, crouch and crawl; can occasionally climb ladders, ropes and scaffolds and balance; and should avoid concentrated exposure to hazards, including wet, slippery and uneven surfaces, and unprotected heights.  (*Id.* at 15-16).

At step four, the ALJ determined that with his RFC, Mr. Iserloth was not capable of performing past relevant work as a construction carpenter and drywall applicator as this past relevant work would expose him to workplace hazards.  (*Id.* at 19).

7

At step five, the ALJ determined that, considering his age, education, work experience, and RFC, Mr. Iserloth was capable of making a successful adjustment to other work that existed in significant numbers in the national economy as a merchandise deliverer, hand launderer, and hand packager. Therefore, the ALJ decided that Mr. Iserloth has not been under a disability since December 11, 2013, the claimed onset date of his disability, through June 5, 2015, the date of the ALJ's decision. (*Id.* at 20).

**B.   Mr. Iserloth's Position**

Mr. Iserloth argues the Court should reverse the Commissioner's decision and remand the case to the Commissioner for the immediate award of benefits or further hearing because:

1.   The ALJ's determination that Mr. Iserloth's statements concerning the intensity, persistence and limiting effect of his symptoms were not entirely credible is erroneous because it is not supported by substantial evidence. (Doc. 11 at 6).

2.   The weight the ALJ gave to Mr. Iserloth's treating physician, Dr. Warr, is contrary to the regulations and the law. (*Id.*)

3.   The ALJ's determination that Mr. Iserloth's emphysema and degenerative disc disease were not severe impairments is erroneous. (*Id.*)

4.   The ALJ's hypothetical to the vocational expert is erroneous because it failed to incorporate all of Mr. Iserloth's impairments. (*Id.*)

**C.   The Commissioner's Position**

The Commissioner argues that the Court should enter summary judgment in her favor because:

1.    The ALJ provided legally sufficient reasons supported by substantial evidence for determining that Mr. Iserloth's  statements concerning the intensity, persistence and limiting effect of his symptoms were not entirely credible and therefore committed no error.  (Doc. 12 at 4-7).

2.    The ALJ provided legally sufficient reasons supported by substantial evidence for discounting Dr. Warr's opinions.  (*Id.* at 7-9).

3.    The ALJ properly determined that Mr. Iserloth's emphysema and degenerative disc disease were not severe impairments and any error in doing so was harmless.  (*Id.* at 2-4).

4.    The ALJ's hypothetical to the vocational expert was proper and Mr. Iserloth's argument that it was erroneous is nothing more than a restatement of his argument that the ALJ improperly weighed the medical and testimonial evidence.  (*Id.* at 2, n. 1).

## V.  ANALYSIS

### A.    Mr. Iserloth's credibility

#### 1.    Legal standards

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' " *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). In this analysis,

the claimant is not required to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).   Nor must a claimant produce "objective medical evidence of the pain or fatigue itself, or the severity thereof."   *Garrison,* 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of  her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1014-1015 (citing *Smolen*, 80 F.3d at 1281); *see also Robbins v. SSA*, 466 F.3d 880, 883 (9th Cir. 2006) ( "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").  "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison,* 759 F.3d at 1015 (citing *Moore v. Comm'r of SSA*, 278 F.3d 920, 924 (9th Cir. 2002).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient.   *Smolen*, 80 F.3d at 1284; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). The Ninth Circuit has stated the

following in relation to the ALJ's obligation to make specific findings:

> Indeed, "[o]ur decisions make clear that we may not take a general finding—an unspecified conflict between Claimant's testimony ... and her reports to doctors—and comb the administrative record to find specific conflicts." Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error.

*Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (internal citation omitted).

The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas v. Barhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (citing *Light v. SSA*, 119 F.3d 789, 792 (9th Cir. 1997)).

## 2.    Analysis

The ALJ determined that Mr. Iserloth's "statements concerning the intensity, persistence and limiting effect of these symptoms are not entirely credible for the reasons explained in this decision." (Doc. 7 at 16). The ALJ then discussed some of the medical care and treatment Mr. Iserloth received for his cancer treatment and how he responded to this treatment. (*Id.* at 16-17). The ALJ then proceeded to discuss previous information Mr. Iserloth provided which the ALJ determined "indicates he is not as limited as he alleges or perceives himself to be." (*Id.* at 17). The information the

11

ALJ referred to was from a June 14, 2014 "Functional Report" Mr. Iserloth submitted in which he states he is able to wash dishes, do small chores, fix small meals, take walks, care for pets, work with models, watch television, drive a car, do grocery shopping, count change and handle savings and checking accounts. (*Id.*)  The ALJ also cited to Mr. Iserloth's testimony at the hearing that he was able to cook, barbeque, vacuum floors, shop for groceries, and walk his dog.

However, the ALJ failed to specifically identify what testimony from Mr. Iserloth was not credible in light of the evidence she cited.  The Court is therefore left to speculate about what specific complaints from Mr. Iserloth are rendered incredible by the evidence the ALJ discussed in her decision.

The Court therefore determines that the ALJ committed legal error in finding that Mr. Iserloth's statements about the intensity, persistence, and limiting effect of his symptoms are not entirely credible.

### B.    Dr. Warr's opinions

#### 1.    Legal standards

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence."

*Trevizo v. Berryhill*, ___ F.3d ___, 2017 WL 4053751 (9th Cir. 2017) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

### 2. Analysis

Dr. Warr, who is Mr. Iserloth's treating physician for his cancer, authored a May 6, 2014 letter in which he stated his opinion that "[Mr. Iserloth] is a patient of mine. He remains disabled and unable to work at this time as he continues receiving therapy for his cancer." (Doc. 7 at 344). Dr. Warr expressed a similar opinion in a September 11, 2014 treatment note when he stated that "[Mr. Iserloth] is unable to work full time because of his presumably treatment related residual morbidities." (*Id.* at 414). Dr. Warr also expressed the following opinions in an April 14, 2015 "DISABILITY QUESTIONNAIRE" that he completed: (1) Mr. Iserloth would not be able to return to

his past employments as a construction worker and bartender because he becomes easily fatigued and lower extremity swelling as a result of his cancer, DVT, and continued treatment with an anti-coagulate; (2) Mr. Iserloth would be unable to lift and carry up to 20 lbs. for 2.6 hours per day or up to 10 lbs. for up to 5.3 hours per day at a full-time job because of fatigue, dyspnea, and leg pain; (3) Mr. Iserloth would be limited to one to one and one-half hours a day of walking or standing at a full-time job; (4) Mr. Iserloth's fatigue would continue for one to two more years.  (*Id.* at 417).

The ALJ gave "no significant weight" to Dr. Warr's opinions.  Instead of relying on Dr. Warr's opinions, the ALJ gave "some weight" to a March 11, 2014 opinion from David Jordan, M.D., and a July 21, 2014 opinion from William Fernandez, M.D.–neither of whom treated or examined Mr. Iserloth–that "[Mr. Iserloth's] impairments would be non-severe within 12 months of the onset date." (*Id.*)  The ALJ went on to ultimately determine that Mr. Iserloth's "deep vein thrombosis in the left lower extremity in December 2013, and in the right lower in September 2014, and prolonged use of Coumadin, are severe impairments which reduce his residual functional capacity to medium work with postural and environmental limitations."  The ALJ also determined that Mr. Iserloth had the residual functional capacity to stand/walk six hours per day or push and pull fifty pounds occasionally and twenty-five pounds frequently.

14

The ALJ determined that Dr. Warr's May 6, 2014 and September 11, 2014 opinions are not a medical opinions regarding the nature and severity of Mr. Iserloth's impairments, but rather are opinions reserved for the Commissioner and as such these opinions are not entitled to controlling weight or special significance. (*Id.* at 18). In relation to Dr. Warr's April 14, 2015 opinions, the ALJ determined these were entitled to no significant weight because: (1) they were "inconsistent with Dr. Warr's own observations that [Mr. Iserloth] appeared to be well and in no acute distress"; and (2) they are "inconsistent with [Mr. Iserloth's] admissions that he was feeling well after surgery and after chemotherapy ended and with his failure to report symptoms of fatigue, shortness of breath and weakness to Dr. Warr." (*Id.*) The crux of these reasons is the ALJ's determination that Dr.Warr's opinions conflict with his treatment notes.

In relation to Dr. Warr's May 6, 2014 and September 11, 2014 opinions, the following Ninth Circuit holding is instructive:

> In disability benefits cases such as this, physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability—the claimant's ability to perform work. As we stated in *Matthews v. Shalala*, 10 F.3d 678 (9th Cir.1993), " '[t]he administrative law judge is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them without presenting clear and convincing reasons for doing so.' " A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record. In sum, reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion.

*Reddick*, 157 F.3d at 725 (internal citations omitted).

Assuming that Dr. Warr's May 6, 2014 and September 11, 2014 opinions were contradicted, the ALJ failed to provide a specific and legitimate reason for rejecting Dr. Warr them and it was error for failing to do so.

In relation to Dr. Warr's April 14, 2015 opinions, assuming these opinions were contradicted, contradictions between a doctor's opinion and that doctor's own clinical notes is a specific and legitimate reason to reject a treating physician's opinion that is contradicted. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009). Thus, the Court's analysis turns to whether there is substantial evidence in the record to support the ALJ's determination that Dr. Warr's opinions are contradicted by his own clinical notes.

Rather than citing to specific medical records in support her determination, the ALJ cited to the entirety of Exhibits 2F, 3F, 4F, 5F and 6F, which comprise 140 pages of medical records.   (Doc. 7 at 276 - 416).  It is not the Court's role to comb through the medical records to find records that may support the ALJ's determination that Dr. Warr's April 14, 2015 opinions were in conflict with his treatment notes.  Rather, it is the Court's function is to "review the ALJ's decision based on the reasoning and factual findings set forth by the ALJ." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226 (9th Cir. 2009).  Because the ALJ failed to cite to specific medical records from Dr. Warr that

contradict with his opinions, the Court finds that substantial evidence does not support the ALJ's determination.

Finally, the ALJ's determination that Mr. Iserloth has the residual functional capacity to, among other things, "stand/walk for 6 hours per day" and "push and pull 50 pounds occasionally and 25 pounds frequently," is directly contrary to Dr. Warr's opinions. No medical source opined that Mr. Iserloth had these capacities. Furthermore, the ALJ provided no explanation as to how she arrived at this determination and she cited to no evidence in the record in support of her determination. The Court therefore determines that the ALJ's determination was arbitrary and she erred in rejecting Dr. Warr's opinions on Mr. Iserloth's ability to stand/walk and to push and pull.

Mr. Iserloth also argued that the ALJ had a duty to fully develop the record with respect to Dr. Warr's inconsistencies and failed to do so. (Doc. 11 at 20). However, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Here, the evidence is not ambiguous and the record is not inadequate. The Court therefore finds that the ALJ did not err in failing to develop the record.

### C.    Severe impairments

17

### 1.    Legal standards

Step two of the five-step sequential inquiry imposes a *de minimis* screening device to dispose of groundless claims. *Smolen*, 80 F.3d at 1290.  The Social Security Regulations and Rulings, as well as the cases applying them, discuss the step two severity determination in terms of what is "not severe." *Id.*  An impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." *Id.*  Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.*

In assessing a claimant's RFC, the ALJ is required to consider all of the claimant's medically determinable impairments, including those medically determinable impairments that are not "severe," and any related symptoms that affect what the claimant can do in a work setting. 20 C.F.R § 404.1545; 20 C.F.R. § 416.945.  An ALJ's failure to determine that an impairment is severe at step two is harmless error where the ALJ proceeds to the next step and where the ALJ considers the symptoms and limitations from all of the claimant's medically determinable impairments in the RFC assessment. *Gray v. Comm'r of SSA*, 365 Fed. Appx. 60, 61 (9th Cir. 2010) (citing *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)).

### 2.    Analysis

The ALJ determined that Mr. Iserloth's emphysema and degenerative disc disease were not severe impairments.  Mr. Iserloth argues that this determination was error and that  the ALJ's determination that Mr. Iserloth's degenerative disc disease was not a severe impairment "precludes the adverse credibility finding for [Mr. Iserloth] and prevents reliance upon the vocational consultant's testimony."  (Doc. 11 at 19).  Mr. Iserloth also argues that by determining that Mr. Iserloth's emphysema and degenerative disc disease were not severe, "the ALJ was then able to find his descriptions of those conditions not credible."  (Doc. 15 at 3).

The Commissioner argues that the ALJ correctly determined that Mr. Iserloth's emphysema was not a severe impairment because he failed to identify a medically acceptable source providing a diagnosis for emphysema.  (Doc. 12 at 3).  The Commissioner further argues that even assuming that Mr. Iserloth is correct, any error was harmless when the decision reflects that the ALJ's "decision reflects that the ALJ considered any limitations posed by" the omitted impairment.  (*Id.*).

The Court's concludes that the ALJ did not err in determining that Mr. Iserloth's claimed emphysema was not a severe impairment because the record fails to reflect a diagnosis of this condition from a medically acceptable source.  Furthermore, in relation to Mr. Iserloth's degenerative disc disease and emphysema, the ALJ's decision reflects that she "considered all symptoms and the extent to which these symptoms can

reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id.* at 16).  The Court therefore determines that any error the ALJ may have committed in not determining Mr. Iserloth's degenerative disc disease or emphysema to be a severe impairment was harmless.

### D.     Remand for further proceedings or an award of benefits

The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo v. Berryhill*, ___ F.3d ___, 2017 WL 4053751 (9th Cir. 2017) (citing *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (remanding for determination of benefits where the panel was "convinced that substantial evidence does not support the Secretary's decision, and because no legitimate reasons were advanced to justify disregard of the treating physician's opinion")).  "[I]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded" for further proceedings.  *Id.*  (citing *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)).  Generally, however, where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required

to find the claimant disabled on remand," *id.* at 1020, we remand for an award of benefits. *Id.*

Here, the record contains more than 400 pages and is extensive. (Doc. 15 at 1-417). Included in the record are 163 pages of medical records detailing and documenting the care and treatment Mr. Iserloth during the relevant period of time. (*Id.* at 253 - 416). The record also reflects Mr. Iserloth's testimony before the ALJ (*id.* at 31-50), his written responses to written inquiries about his work history and limitations (*id.* at 158-173, 186-194, 206-209 ), and the responses of his former wife (*id.* at 243-246), all of which corroborate his impairments. Furthermore, the VE specifically opined that if Mr. Iserloth was limited to walking or standing to two out of eight hours, as Dr. Warr opined he was, the jobs the VE identified that could be done in response to the ALJ's hypothetical questioning could not be performed. (*Id.* at 61). Therefore, the Court concludes that the first prong of *Garrison* has been satisfied.

The second and third prongs or *Garrison* are also satisfied. The ALJ failed to provide legally sufficient reasons for rejecting the informed medical opinion of Dr. Warr. As just discussed, if credited as true, Dr. Warr's opinions establish that Mr. Iserloth is disabled for the period of time set forth in the "DISABILITY QUESTIONNAIRE" ("1 to 2 more years"). (Doc. 15 at 417). Finally, the Court determines there is no "serious doubt" based on "an evaluation of the record as a whole"

that Mr. Iserloth is, in fact, disabled given his severe impairments.  Thus, all of the

prongs of the *Garrison* test are satisfied.

## VI. FINDINGS AND RECOMMENDATIONS

The Court **FINDS**:

1.      The ALJ committed legal error in determining that Mr. Iserloth's
        statements about the intensity, persistence, and limiting effect of his
        symptoms are not entirely credible.

2.      The ALJ's determination that Dr. Warr's opinions were not be given
        significant weight is based upon legal error and not supported by
        substantial evidence.

3.      The ALJ's determination that Mr. Iserloth's emphysema and degenerative
        disc disease were not severe impairments was not error.

The Court **RECOMMENDS**:

1.      Mr. Iserloth's claim be remanded to the Commissioner with instructions
        for the ALJ to calculate and award benefits.

2.      The Commissioner's Motion for Summary Judgement should be denied.

3.      Mr. Iserloth's Motion for Summary Judgment should be granted.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS AND RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written

objections to these Findings and Recommendations within fourteen (14) days of the

date entered as indicated on the Notice of Electronic Filing.  A district judge will make

22

a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge.

DATED this 2nd day of October, 2017.

John Johnston
United States Magistrate Judge